```
               IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

                                  :
UNITED STATES OF AMERICA
                                  :

    v.                            :   Civil Action No. DKC 12-1771

                                  :
$40,041.20 IN U.S. CURRENCY
SEIZED FROM STATE DEPARTMENT      :
FEDERAL CREDIT UNION ACCOUNT
NUMBER XXX786                     :
```

**MEMORANDUM OPINION**

Presently pending and ready for review in this civil forfeiture case is the motion to dismiss filed by Claimant Lucille F. Thomas-Davis ("Thomas-Davis" or "Claimant") (ECF No. 6). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be denied.

I.  **Background**

This civil forfeiture action filed by the United States of America ("the Government") arises from a Maryland state narcotics investigation.[1] On September 13, 2011, officers with the Prince George's County Police Department intercepted a Federal Express parcel addressed to Mel Angeles. (ECF No. 1,

---

[1] The following facts are based on the allegations in the Government's verified complaint and the attached declaration of Maria E. Pena, a task force officer with the Drug Enforcement Administration. (ECF No. 1).

Pena Decl. ¶ a). After a positive K-9 sniff test, the officers obtained a search and seizure warrant for the package and found 12 pounds of marijuana inside. The police then executed a controlled delivery of the package, leading to the arrest of a woman who signed for the package as "Mel Angeles." At that point, Jimmy Thomas, Jr. ("Thomas") arrived on the scene in a black Cadillac Escalade truck. Although Thomas claimed to be a cable repairman who was there for a job, he could not verify his employment, and further investigation revealed numerous phone calls between Thomas and Angeles indicating that the two knew each other personally. The officers then observed a parcel in Thomas's truck that was similar in appearance to the one sent to Angeles. After a positive K-9 sniff test of this second package, the officers arrested Thomas on charges of conspiracy to possess with intent to distribute marijuana. Thomas was carrying $1,340.00 in U.S. currency at the time of his arrest. A subsequent search of Thomas's truck produced 12.7 pounds of marijuana, along with $19,640.00 in U.S. currency, certain banking documents, and "owe sheets." (*Id.* ¶ g).[2]

The next day, September 14, Prince George's County Police officers searched Thomas's home and found drug paraphernalia,

---

[2] Owe sheets are "sometimes used by drug distributers to keep track of the amount of drugs that have been provided to customers on consignment." *United States v. Wilson*, 484 F.3d 267, 270 (4th Cir. 2007).

2

$3,600.00 in U.S. currency, and additional documents.  The officers also seized $40,042.20 in U.S. currency ("the Defendant Currency") from a State Department Federal Credit Union account under the names of Thomas and Claimant, Thomas's mother.  (*Id.* ¶ i).  The officers separately seized $55,967.05 in U.S. currency from a Bank of America account held in the name of Thomas alone.[3]

A week later, on September 20, 2011, officers with the District of Columbia Metropolitan Police Department arrested Thomas on felony drug charges following a traffic stop.  At the time of his arrest, Thomas was carrying $3,530.00 in U.S. currency, a hand-rolled marijuana cigarette, and over 483 grams of marijuana.

In a follow-up interview with Prince George's County Police officers on September 22, Thomas "gave contradictory statements pertaining to his accumulation" of the Defendant Currency, as well as the other funds seized by D.C. and Maryland law enforcement officials.  (*Id.* ¶ o).  Thomas contended that he received income from (1) his work as a cable contractor; (2) various rental properties he owned; and (3) a hair salon business venture.  Yet "[a] query of reported wages for Thomas" apparently showed that he had an income of less than $10,000 for prior years and no reported wages for 2011.  (*Id.* ¶ t).

---

[3] The property seized from Thomas's Bank of America account is not at issue in this forfeiture action.

Specifically with respect to the Defendant Currency, Thomas told police that his mother, Thomas-Davis, opened State Department Federal Credit Union account #XXX786 and continues to have access the account. Thomas further explained, however, that although his mother withdraws money from the account, she "does not deposit any funds." (*Id.* ¶ r). During their investigation, police also learned that Thomas has been arrested on several prior occasions "for having large quantities of marijuana." (*Id.* ¶ s).

The Government initiated this forfeiture action *in rem* on June 14, 2012, alleging that the Defendant Currency is "subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6)" because it "contains proceeds obtained from the distribution of Controlled and Dangerous substances in violation of 21 U.S.C. § 841." (*Id.* at 4). On June 15, the clerk issued an arrest warrant *in rem* for the Defendant Currency (ECF No. 2), which was returned as executed on July 2 (ECF No. 3). On the same day, the Government sent a copy of the verified complaint and a "Notice of Complaint for Forfeiture" to Thomas-Davis at her home address. (ECF No. 7-1).

On July 23, 2012, Thomas-Davis filed a *pro se* verified claim to the Defendant Currency, which she contends represents the "repayment of loans [she] made" to her son. (ECF No. 4, at 1). On August 17, 2012, Thomas-Davis filed a motion to dismiss

4

the Government's verified complaint pursuant to Fed.R.Civ.P. 12, asserting three grounds of relief: (1) insufficiency of process; (2) insufficiency of service of process; and (3) failure to state a claim upon which relief can be granted. (ECF No. 6). The Government filed an opposition on September 4, 2012 (ECF No. 7), and Thomas-Davis did not reply.

**II. Timeliness of Thomas-Davis's Motion**

As an initial matter, the Government appears to contend that Thomas-Davis's motion must be denied as untimely. (*See* ECF No. 7 ¶¶ 4-5). This argument will be rejected.

The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, in conjunction with the Federal Rules of Civil Procedure, apply to *in rem* forfeiture actions. *United States v. $85,000 in U.S. Currency*, No. WDQ-10-0371, 2011 WL 1063295, at *1 (D.Md. Mar.21, 2011) (citation omitted). Under Supplemental Rule G(5)(b), a claimant who has asserted an interest in the defendant property "must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim." The procedural requirements embodied in the Supplemental Rules "ensur[e] that putative claimants come forward as quickly as possible after the initiation of forfeiture proceedings so that the court may hear all interested parties and resolve the dispute without delay." *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 664

F.Supp.2d 97, 101 (D.D.C. 2009) (internal quotation marks omitted). Generally, claimants are expected "to adhere strictly to [the] requirements" of the Supplemental Rules. *Id.* at 101. "In some circumstances, however, especially where claimants are proceeding *pro se*, courts may excuse some minor procedural failings so long as the underlying goals of the Supplemental Rules are not frustrated." *Id.* (internal quotation marks omitted); *see also United States v. One 2007 Mercedes Benz CLS 550*, No. WDQ-11-3390, 2012 WL 1072252, at *1 (D.Md. Mar. 28, 2012). Relevant factors to consider in deciding whether to overlook a claimant's procedural missteps include "the claimant's good faith attempts to comply with procedural requirements" and "whether prejudice to the United States will result from excusing the claimant's procedural errors." *All Assets Held*, 664 F.Supp.2d at 102.

Here, Thomas-Davis filed her motion to dismiss on August 17, 2012, 23 days after she filed her verified claim. Missing a deadline by only two days clearly constitutes a "minimal delay." *See One 2007 Mercedes Benz*, 2012 WL 1072252, at *1 (construing a 26-day delay as "minimal"). Moreover, the motion is dated August 15, 2012, evidencing a good faith effort by Thomas-Davis to comply with Supplemental Rule G's procedural requirements, particularly given her *pro se* status. In light of these factors – and because the Government ultimately will not be prejudiced

6

by doing so – the merits of Claimant's motion will be considered, notwithstanding Thomas-Davis's technical non-compliance with Supplemental Rule G(5)(b).

### III. Motion to Dismiss for Insufficiency of Process & Service

Claimant Thomas-Davis initially seeks dismissal by arguing that both process and service of process were insufficient.

#### A.   Standard of Review

"The process that begins an *in rem* forfeiture action is addressed by subdivision 3" of Supplemental Rule G.  *See* Supp.R.G advisory committee's note.  Where, as here, the defendant property is not real property and is already "in the government's possession, custody, or control," the clerk of the court "must issue a warrant to arrest the property." Supp.R.G(3)(b)(i).  The warrant is required to be delivered to a person or organization "authorized to execute it," including a United States marshal.  Supp.R.G(3)(c)(i).  The authorized person or organization must then execute the warrant. Supp.R.G(3)(c)(ii).

The Government also has to comply with certain notice requirements when initiating a forfeiture action. Significantly, however, "[n]otice of the action does not require formal service of summons in the manner required by [Fed.R.Civ.P. 4] to initiate a personal action." Supp.R.G. advisory committee's note.  Instead, the Government must

(1) publish notice of a forfeiture action (subject to certain limited exceptions not relevant here); and (2) send "notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government." Supp.R.G(4)(a)-(b). Such notice must be sent *via* "means reasonably calculated to reach the potential claimant" and must include certain information, including (1) the date of the notice; (2) the deadline for filing a claim; (3) the deadline for filing an answer or Rule 12 motion; and (4) the name of the Government attorney to be served. Supp.R.G(4)(b)(ii)-(iii). Notwithstanding these requirements, Supplemental Rule G also establishes that "[a] potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." Supp.R.G(4)(b)(v).

**B. Analysis**

Although Thomas-Davis generally asserts that the Government's complaint is subject to dismissal for insufficient process and service of process, she does not offer any specific arguments or evidence to show that the Government failed to meet the process or notice requirements of Supplemental Rule G.

With respect to process, the clerk of the court issued an arrest warrant *in rem* for the Defendant Currency, which was

8

already in the Government's custody.  (ECF No. 2).  The United States Marshals Service executed the warrant on June 21, 2012. (ECF No. 3).  Thus, the process requirements set forth in subdivision 3 appear to have been met here.

With respect to notice, the Government submits evidence indicating that it sent a "Notice of Complaint for Forfeiture" to Thomas-Davis on June 15, 2012, along with a copy of the verified complaint.  (ECF No. 7-1, at 1).  The Notice contains each of the required elements set forth in Supplemental Rule G by (1) stating the date of notice (*i.e.*, June 14, 2012); (2) explaining that Thomas-Davis had 35 days to file a verified claim for the Defendant Currency; (3) advising that Thomas-Davis had 21 days after filing a verified claim to file either an answer or a Rule 12 motion; and (4) stating that any claim, answer, or motion must be sent to Richard C. Kay, an Assistant United States Attorney based in Baltimore.  (*Id.* at 3-4).  The Government sent the notice *via* certified mail to Thomas-Davis's home address, and she signed for delivery on June 18, 2012. (*Id.* at 2 & 4).  Based on this evidence, and because Thomas-Davis does not offer any specific argument to the contrary, it cannot be said that the Government failed to comply with Supplemental Rule G's notice requirements.

Accordingly, Thomas-Davis's motion will be denied to the extent it seeks dismissal based on insufficient process or insufficient service of process.

**IV. Motion to Dismiss - Failure to State a Claim**

Thomas-Davis also seeks dismissal by arguing that the Government's complaint fails to state a claim upon which relief can be granted.

    **A.    Standard of Review**

A motion to dismiss a forfeiture action for failure to state a claim is governed by Supplemental Rule G(2), which requires a verified complaint to "state sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial." Supp.R.G(2)(f). Although Supplemental Rule G "requires a more particularized complaint than is demanded in civil actions generally," 12 C. Alan Wright, A. Miller, & R. Marcus, Fed. Prac. & Proc. Civ. § 3242 (2d ed.), the Government need not produce *all* evidence that will be introduced at trial in its complaint. Rather, the Government can "gather [additional] evidence after the filing of a [verified complaint] for forfeiture" to meet its burden at trial. 18 U.S.C. § 983(c)(2); *see also United States v. Real Prop. Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1193 (9th Cir. 2004) (the Government "is not required to prove its case simply to get in the courthouse door"). Indeed, "no

complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D). The Government need only "state[] the circumstances giving rise to the forfeiture claim with sufficient particularity" to allow a claimant to conduct a "meaningful investigation of the facts and draft[] a responsive pleading." *United States v. Mondragon*, 313 F.3d 862, 867 (4th Cir. 2002).[4]

B.  **Analysis**

Here, the Government seeks relief pursuant to 21 U.S.C. § 881(a)(6), which establishes that money is subject to forfeiture if it is "furnished by any person in exchange for a controlled substance," "traceable to such an exchange," or "used or intended to be used to facilitate a violation of this subchapter." Under the Civil Action Forfeiture Act of 2000 ("CAFRA"), the Government will ultimately have to show, by a preponderance of the evidence, that there is a "substantial connection" between the Defendant Currency and Thomas's alleged

---

[4] Although *Mondragon* pre-dated the enactment of Supplemental Rule G(2), the advisory committee's notes expressly incorporated the Fourth Circuit's holding in promulgating the new pleading standard for *in rem* forfeiture actions. *See United States v. $74,500 in U.S. Currency*, No. RDB-10-3380, 2011 WL 2712605, at *2 (D.Md. July 11, 2011) (citing *All Assets Held at Bank Julius Baer & Co.*, 571 F.Supp.2d at 16).

11

drug trafficking activities. *See United States v. Parcel of Property*, 337 F.3d 225, 233 (2$^d$ Cir. 2003); 18 U.S.C. § 983(c)(1), (3). For purposes of the instant motion to dismiss, however, the standard is whether, based on the totality of the circumstances, the Government "has provided sufficient allegations to support a nexus between the alleged criminal offense and the Defendant Currency." *74,500 in U.S. Currency*, 2011 WL 2712604, at *3 (citing *Mondragon*, 313 F.3d at 866).

The complaint's factual allegations meet this standard. Specifically, the Government alleges that: (1) on September 13, 2011, Thomas was arrested on charges of conspiracy to possess with intent to distribute marijuana; (2) the police found over 12 pounds of marijuana, as well as certain banking documents and "owe sheets," in Thomas's truck; (3) the next day, the Defendant Currency (*i.e.*, $40,041.20 in U.S. currency) was seized from a bank account held in the names of Thomas and his mother, Thomas-Davis; (4) although Thomas-Davis opened the account and continues to have access to it, she only uses the account to make withdrawals and does not deposit any money into the account; (5) Thomas gave conflicting reports of how he acquired the Defendant Currency; (6) Thomas's reported wages were less than $10,000 for the past several years and were $0 for 2011; and (7) Thomas has been arrested on numerous occasions for possessing large quantities of marijuana. Viewed in the

totality, these allegations support an inference that the Defendant Currency represents proceeds from Thomas's drug trafficking offenses. Thus, the complaint permits a reasonable belief that the Government will be able to establish at trial that the funds are subject to forfeiture. Moreover, the complaint's factual allegations provide Thomas-Davis with enough detail to investigate further and to draft a responsive pleading. Although the Government may need to adduce additional evidence to prevail on the merits, the verified complaint meets the pleading requirements of Supplemental Rule G, and Thomas-Davis's motion must be denied.[5]

**V. Conclusion**

For the foregoing reasons, the motion to dismiss filed by Claimant Lucille F. Thomas-Davis will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[5] The Government's argument that Thomas-Davis cannot establish a viable "innocent owner" defense within the meaning of 18 U.S.C. § 983(d) will not be addressed as it has no bearing on whether the Government has met its initial pleading burden under Supplemental Rule G(2). *Cf. United States v. Assets Described in Attachment A to the Verified Complaint Forfeiture In Rem*, 799 F.Supp.2d 1319, 1324 (M.D.Fla. 2011) ("[T]he burden of establishing an innocent owner defense does not arise until after the Government meets its burden of establishing the forfeitability of the subject property in the first instance.").